WIGGINTON, Chief Judge.
Defendant has appealed a final judgment based upon a jury verdict awarding to plaintiff damages suffered as a result of alleged negligent acts of defendant.
The prime thrust of the appeal challenges the sufficiency of the evidence to support the verdict and judgment. Appellant contends that the evidence fails to establish any negligence on its part, and affirmatively establishes that appellee’s right to recover is barred under the legal doctrines of contributory negligence and assumption of risk.
Plaintiff was an experienced truck driver who on the critical date was engaged in transporting a tank truck of sulphuric acid from a chemical company in South Carolina to defendant’s plant in Jacksonville. Plaintiff had not previously made any deliveries to defendant’s plant and was unfamiliar with its facilities. Upon arriving at the plant he was directed to an unloading area where it was his duty to discharge his tank truck of acid into defendant’s storage tank located on the premises.
The evidence is susceptible of a finding by the jury of the following facts. In order to unload the tank of acid one end of a flexible hose carried as part of the truck’s equipment is attached to a discharge pipe at the bottom rear of the truck tank, the other end being attached to an overhead receiving pipeline which leads to the top of the storage tank into which the acid is to be placed. A compressed air line maintained by defendant as part of its facilities is then attached to a valve in the top of the truck tank so as to permit entry of compressed air into the tank causing a pressure which forces the acid out of the bottom of the tank through the hose and receiving line into the storage tank. The unloading facilities constructed and maintained by defendant placed the top end of the receiving line at the storage tank some 17 feet above the lowest end of the line at the point of its connection with the truck tank. This arrangement creates a back pressure in the receiving line until such time as the load of acid is forced by air pressure out of the truck tank and through the receiving line into the storage tank.
After the flexible hose and air hose are connected to the truck tank and the valves opened by plaintiff, it is the duty and responsibility of defendant, through its employees, to start the flow of compressed air through the air line into the tank and to permit the flow of air to continue until the unloading process is completed. The normal time required for unloading a truck tank of acid by the procedure here-inabove outlined is 45 minutes.
After plaintiff connected the hoses and opened the valves, he heard the air flowing into the truck tank and being satisfied that the unloading procedure had satisfactorily commenced, left the unloading area and walked to a nearby restaurant for refreshments. Upon returning to his truck he listened and heard the air continuing to flow into the tank and being satisfied that the tank was not yet empty, entered the cab of his truck and dozed off to sleep. Upon awakening he realized that approximately two hours had elapsed from the time the unloading procedure had commenced, which was ample time for it to be completed. He listened but heard no air entering the tank so correctly assumed that the air supply had been cut off. He examined the helper springs on his trailer and noted that they were in an up position *327 indicating that the load had been discharged- and the tank was empty.
Before uncoupling the flexible hose from the discharge pipe at the bottom rear of his truck tank it was customary for the driver to close a cutoff valve usually located on the receiving line so as to prevent a back flow through the line in the event it was not completely clear of acid. Plaintiff had noted when coupling his hose that there was no cutoff value on defendant’s receiving line, so it was not possible for him to follow the procedure normally employed at other plants in cases of this kind. He thereupon proceeded to uncouple the lower end of the flexible hose from the discharge pipe at the bottom rear of his truck tank. When the coupling became loosened, back pressure in the line blew the end of the hose from the discharge pipe resulting in sulphuric acid being sprayed over plaintiff’s face and body. He looked but failed to locate a safety shower for use in washing away the acid. Safety showers are required to be installed in areas such as this where acid is handled in order to minimize any injuries which may result from accidents of the kind experienced in this case. Because the safety shower could not be found by plaintiff, he searched through the plant area maintained by defendant and after eight or ten minutes located a water hose which was utilized in an effort to .minimize the burns caused by contact of the acid with his body. During the unloading procedure plaintiff did not avail himself of safety clothing required for use by drivers engaged in unloading acid from tank trucks.
Appellant contends that appellee knew before he commenced the unloading operation that no cutoff valve was located on the receiving line in the unloading area, therefore, even if the absence of such a cutoff valve constituted an act of negligence as alleged in the complaint, this fact was well known to appellee and its absence as a safety device was not the proximate cause of the injuries suffered by appellee. The evidence established that a safety shower had been installed by appellant at a location some 20 feet from the unloading area contrary to the allegations of the complaint, but appellee made no inquiry as to its location before starting to unload the acid. Appellant therefore urges that appellee’s failure to find and use it after being sprayed with the acid resulted from his own negligence and not that of appellant. Appellee counters with the argument that the safety shower installed and maintained by appellant consisted of only a one-inch standpipe topped with an elbow and nipple but was without a shower head; that it was indistinguishable as a safety shower, unmarked, and not of the type usually found in areas of this kind. Appellant further contends that by his failure to wear safety clothing while unloading the shipment of acid as required by safety regulations, appellee assumed the risk of becoming burned by any acid which might come in contact with his body and is barred as a matter of law from recovery for the damages suffered.
Although appellant’s failure to install a cutoff valve on the receiving line as a safety measure might not, under the facts of this case, constitute an act of negligence for which it should be held liable, the jury could have reasonably concluded that appellant was negligent when, through its employees, it cut off the supply of compressed air into the truck tank before all of the acid in the tank and receiving line had been completely evacuated. The jury could have reasonably concluded that the supply of compressed air was prematurely discontinued as a result of the negligence of defendant, leaving the receiving line filled with acid subjected to the back pressure against the low end of the line at the point where the hose connected to the discharge pipe on the truck tank, and that it was this pressure which'caused the acid to spray over appellee’s body when he attempted to disconnect the hose from the tank. Although appellant’s action in this regard was not alleged as an act of negli *328 gence in the complaint, the issue was tried with the express or implied consent of the parties thereby becoming an issue on' which reliance may be placed in supporting the verdict rendered by the jury.[1] Whether appellee was guilty of contributory negligence in attempting to disconnect the flexible hose from the truck tank under the circumstances shown by the evidence was a jury question which should not have been and was not resolved by the trial judge as a matter of law.[2]
We are likewise of the view that whether appellant was negligent in installing the safety shower in the location selected by it and failing to mark or identify it in a more prominent manner so as to be readily located in an emergency was a question for jury determination. We further conclude that appellee’s failure to wear safety clothing while unloading the acid from his truck into appellant’s plant was a factor to be considered by the jury in determining whether he assumed the risk of being injured by the acid which he encountered, but should not be held to be a bar to the action as a matter of law.[3]
We have considered the other points raised by appellant on this appeal, but find them to be without substantial merit.
For the foregoing reasons we conclude that the trial court properly submitted the issues in this case to the jury under appropriate instructions on the law relating thereto, and did not commit error in denying appellant’s motion for a directed verdict and for a new trial. The judgment appealed is affirmed.
CARROLL, DONALD K., and RAWLS, JJ-, concur.

.Rule 1.190(b), R.O.P., 30 F.S.A.
“Amendments to Conform with the Evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment, but failure so to amend shall not affect the result of the trial of these issues. If the evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended to conform with the evidence and shall do so freely when the merits of the cause are more effectually presented thereby and the objecting party fails to satisfy the court that the admission of such evidence will prejudice him in maintaining his action or defense upon the merits.”

. Beikirch v. City of Jacksonville Beach, (Fla.App.1964) 159 So.2d 898.

. Brown v. Kendrick, (Fla.App.1966) 192 So.2d 49.